(C. D. 142)

NEW YORK MERCHANDISE CO., INC. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided April 10, 1939)

*Siegel & Mandell* (*Joshua M. Davidson* of counsel) for the plaintiff.
*Charles D. Lawrence*, Acting Assistant Attorney General (*Webster J. Oliver*, special attorney), for the defendant.

Before TILSON, KINCHELOE, and DALLINGER, Judges

DALLINGER, Judge: This is a suit against the United States, arising at the port of Los Angeles, brought to recover certain customs duties alleged to have been improperly exacted on a particular importation of so-called "kristal star lamps." Duty was levied thereon at the rate of 45 per centum ad valorem under paragraph 397 of the Tariff Act of 1930 as manufactures of metal not specially provided for. It is claimed that said articles are properly dutiable at the rate of 20 per centum ad valorem under the provision in paragraph 229 of said act for "incandescent electric-light bulbs and lamps * * * with metal filaments."

The plaintiff submitted the testimony of three witnesses. No evidence was offered by the Government.

The first witness, Abraham L. Buschman, testified that he was in charge of the electrical department of the plaintiff corporation and had charge of the purchasing and selling of the merchandise therein; that he was familiar with the articles invoiced herein as "tungsten kristal star lamps, 15 volt"; that it is correctly represented by the box of samples in evidence herein as Illustrative Exhibit 1; that each of said articles is composed of a tungsten filament, a washer and metal casing around it, and five pieces of glass in the shape of a crystal star; that tungsten is a metal and hence the tungsten filament is a metal filament; that eight of these crystal lamps constitute a complete outfit which is sold as a Christmas-tree outfit; that such an outfit is always sold as an entirety for a Christmas-tree decoration; that the commercial meaning of incandescent lamp is different from the ordinary dictionary meaning thereof; that the common meaning of incandescent lamp is a unit consisting of a glass bulb with a filament inside and the base, which is connected with an electric circuit and produces light; that Illustrative Exhibit 1 is commercially known as a lamp; that he has sold merchandise like Illustrative Exhibit 1 in Detroit, Chicago, Pittsburgh, St. Louis, Rochester, and on the Pacific coast and in Toronto, Canada; that his salesmen cover the entire United States; that said sales were in wholesale quantities and that the articles are sold in the trade as "kristal star lamps" throughout the United States; and that that name is uniform and definite in the trade.

On cross-examination he testified that regardless of what is added to or placed upon an incandescent electric lamp it is called in the trade a lamp, so long as it is an entire unit and as such used for decorative and lighting purposes, and that the entire unit is called an incandescent electric lamp, the bulb alone being designated as a bulb.

The second witness, John F. Steeves, Jr., employed by the plaintiff corporation as an assistant to the previous witness in the electrical

department, testified that he had sold articles like Illustrative Exhibit 1 throughout the United States; that he had sold such articles in wholesale quantities to F. W. Woolworth Co., H. L. Green, C. I. Murphy, and chain stores; that he had never sold the metal and glass separate from the bulb; that the merchandise was always sold under the same name throughout the country, namely, "kristal star lamps"; that Illustrative Exhibit 1 is an incandescent electric lamp and that the common and ordinary meaning of the bulbs in Illustrative Exhibit 1 is incandescent electric lamps.

On cross-examination he testified that the bulb in Illustrative Exhibit 1 is an incandescent electric lamp, that the word "kristal" is the copyrighted trade name for an article like Illustrative Exhibit 1; that they are sold in complete units under the name of "kristal star lamps"; and that the only electrical element in Illustrative Exhibit 1 is the bulb.

The third witness, Abraham Abramson, in the employ of the Ray Lite Trading Co., importers of bulbs and manufacturers of Christmas-tree outfits, testified that he had sold Christmas-tree outfits similar to Illustrative Exhibit 1 throughout the United States in wholesale quantities; that such an article is known as a "kristal star lamp"; and that said Illustrative Exhibit 1 is an incandescent electric lamp and is sold under that name throughout the United States.

On cross-examination he testified that he imported large quantities of Christmas-tree bulbs; that such bulbs are known as incandescent electric bulbs or lamps; that the five-pointed star of metal and glass cannot be used for any other purpose except in connection with bulbs; that there is no wiring inside the star connected with the bulb; that the bulb furnishes the light that shines through the decorative star covering, which is clamped under the bulb; and that in the trade the witness had sold Illustrative Exhibit 1 as a complete unit, as an incandescent electric lamp.

The witness Buschman, being recalled, testified that he had occasion to issue a catalog explaining merchandise similar to Illustrative Exhibit 1, which catalog was admitted in evidence as Illustrative Exhibit A, and that customers, when ordering an article similar to Illustrative Exhibit 1, ordered it under the name of "BW–106 Kristal Star Lamps."

Upon this record counsel for the plaintiff contend that they have established that the present merchandise, represented by Illustrative Exhibit 1, is commercially known and designated throughout the United States in the trade and commerce as incandescent electric-light bulbs and lamps. But any evidence that may appear in the record to the effect that the imported merchandise was known in the

trade as incandescent electric-light lamps is contradicted by the following testimony of the plaintiff's chief witness, Buschman:

By Mr. DAVIDSON:

Q. Do you have charge of selling units as men go out to sell this particular commodity?—A. Yes, sir.

Q. Do they cover the entire United States?—A. Yes.

Q. And how do they sell this particular commodity; under what name?—A. As "Kristal Star Lamps" * * *.

\* \* \* \* \* \* \*

Q. May I repeat again: How are they sold in the trade to the best of your knowledge?—A. As "Kristal Star Lamps."

Judge DALLINGER. Is that name uniform and definite throughout the trade?

The WITNESS. Yes, sir. That name is used generally and uniformly to identify them. They are carried in the catalog as such; they are imported as such, and even our own company carries that description.

The plaintiff's witness, John F. Steeves, Jr., testified as follows:

By Mr. DAVIDSON:

Q. How do you sell this particular merchandise, in what form, referring to Illustrative Exhibit 1?—A. As "Kristal Star Lamps."

The witness, Abraham Abramson, testified as follows:

Direct examination by Mr. DAVIDSON:

Q. What is the term by which you sell this particular merchandise?—A. That particular lamp is known as a "Kristal Star Lamp."

This evidence, on direct examination of plaintiff's witnesses, is corroborated by an examination of the catalog admitted in evidence as Illustrative Exhibit A.

The construction of paragraph 229 has been the subject of numerous decisions of both this court and the appellate court. In the case of *B. B. T. Corp. of America* v. *United States*, 16 Ct. Cust. Appls. 144, T. D. 42780, there were involved certain aviation field floodlights. It was claimed that said lights were properly dutiable at the rate of 20 per centum ad valorem under paragraph 229 of the Tariff Act of 1922 as incandescent electric-light lamps or bulbs. After quoting numerous dictionary definitions, the court said:

From these definitions it fairly appears that an incandescent electric lamp ordinarily consists of a bulb, fitted with other parts, and the whole forming a lamp. The word is thus restricted in its meaning to the light-giving element and its immediate parts, and does not broaden out enough to embrace every item which goes toward holding the light-giving element in place or magnifying its power or directing its beams. The lamp is the source of the light; the other elements are accessory thereto. It will also be likewise observed that a complete electric lamp consists of several parts, of which one part is the bulb; the bulb, together with the other parts, which, the statute states, may be a "filament" or not, constitute a lamp.

In the case of *United States* v. *Milnor, Inc.*, 16 Ct. Cust. Appls. 472, T. D. 43212, there was involved the question of the dutiable classifica-

tion of certain vase-shaped decorated glass lamps. It was claimed that said articles consisted of incandescent electric-light lamps under paragraph 229 of the Tariff Act of 1922. In that case the court said:

> The record discloses that Exhibit No. 1 is sold and used as a lamp, and, after being fitted with the proper light element and having been connected with an electric current, is used as other lamps are used for illuminating purposes. * * *
> There was considerable testimony offered to the effect that Exhibit No. 1 is a lamp. Whether it is or is not a lamp, as we view the matter, is immaterial. The inquiry necessarily must be not whether it is a lamp, but whether it is an incandescent electric-light bulb or lamp, as provided for in said paragraph 229. Some slight effort was made to prove a commercial designation for the imported articles, but we cannot find in the record sufficient evidence to convince us that such commercial designation has been established. We are therefore relegated to the common understanding of the meaning of the terms used in the statute.

Upon the entire record we are convinced that plaintiff has failed to sustain the burden of proving the collector's classification to be erroneous. Hence, we follow the above-cited authorities and hold that the imported merchandise is properly dutiable at the rate of 45 per centum ad valorem under paragraph 397 of the Tariff Act of 1930 as manufactures of metal not specially provided for, as classified by the collector. All claims of the plaintiff are therefore overruled and judgment will be rendered accordingly.