-(C. D. 686)

J. Morris & Co., Inc. *v.* United States

United States Customs Court, First Division

(Decided September 18, 1942)

*Barnes, Richardson & Colburn (Joseph Schwartz* of counsel) for the plaintiff.
*Paul P. Rao,* Assistant Attorney General (*John J. McDermott* and *Robert C. O'Grady,* special attorneys), for the defendant.

Before Oliver and Walker, Judges

Oliver, Presiding Judge: These two suits were consolidated for the purposes of trial. They involve certain merchandise described on the invoices as "decoration lamps, crystal star" and which was assessed with duty at the rate of 50 per centum ad valorem under paragraph 218 (f) of the Tariff Act of 1930, as modified by the trade agreement with Czechoslovakia (T. D. 49458) as articles composed in chief value of colored, cut, or decorated glass, not specially provided for. Plaintiff claims that the merchandise is properly dutiable either at 20 per centum ad valorem under paragraph 229 of the Tariff Act of 1930 as incandescent electric-light bulbs or lamps with metal filaments, or at 40 per centum ad valorem under paragraph 218 (c), as modified by the trade agreement with Czechoslovakia, *supra,* as illuminating articles, in chief value of glass, for use in connection with artificial illumination.

The only witness who appeared herein was the president of the plaintiff corporation. He stated that the business of his concern was the manufacture of Christmas-tree lighting outfits, the lamps for

which are imported. He identified a sample of the merchandise at bar and the same was admitted in evidence as plaintiff's exhibit 1. It consists of a hollow, colored-glass, five-pointed star about 1¾ inches overall and about 1½ inches through the center. One of the points of the star has an elongated neck which is inserted into and cemented in the threaded metal lamp base. Through this point or neck of the glass star the bare filament wire is fed to the interior hollow section where it enters a small sealed bulb becoming the filament which furnishes the light element of this article. The other end of the filament emerges from the bulb and passes through the seam of the star and is soldered to the upper portion of the metal base.

These stars are made in various colors: red, green, blue, amber, and also clear.

The witness described the article in question as follows:

It is a 15-volt series, crystal star lamp, and it is used in conjunction with seven lamps; and that completes the outfit.

He stated that the bulb has no base, and that its removal from the lamp would prevent a connection with the socket and thus render the article useless. This is confirmed by an examination of the exhibits.

The witness further testified that he bought and sold these articles as "crystal star lamps," that they are ordinarily used in series of eight, and that they are incapable of use individually on ordinary house current. With respect to their use, his testimony is as follows:

Q. Will you just explain exactly how it is used, where it is placed, and so forth?— A. Well, the lamp is screwed into a miniature shell of a tree light, with seven other lamps; the lamp lights and the circuit is completed; and we have a system of Christmas tree illumination.

Q. Do they all light together or in rotation?—A. After the eighth lamp makes contact they all light simultaneously.

There was also admitted in evidence as plaintiff's illustrative exhibit A one of the lamps in question with the glass star broken open. Concerning this illustrative exhibit, the witness stated that the breaking of the glass star did not affect the bulb from giving light. It is important to note, however, that only the top of the star was broken off. A careful examination of illustrative exhibit A reveals that the star is cemented into the brass base together with the metal filament.

No attempt having been made to show that these articles are commercially known as incandescent electric-light lamps or bulbs, we are concerned only with the common meaning. The same issue was before the Court of Customs and Patent Appeals in the matter of *B. B. T. Corp. of America* v. *United States* (16 Ct. Cust. Appls. 144, T. D. 42780) which involved certain aviation field lights. There, as here, the merchandise was claimed to be dutiable as incandescent electric-light lamps or bulbs. After quoting at length several dictionary definitions, the court said:

From these definitions it fairly appears that an incandescent electric lamp ordinarily consists of a bulb, fitted with other parts, and the whole forming a lamp. The word is thus restricted in its meaning to the light-giving element and its immediate parts, and does not broaden out enough to embrace every item which goes toward holding the light-giving element in place or magnifying its power or directing its beams. The lamp is the source of the light; the other elements are accessory thereto. It will also be likewise observed that a complete electric lamp consists of several parts, of which one part is the bulb; the bulb, together with the other parts, which, the statute states, may be a "filament" or not, constitute a lamp.

As hereinabove stated, the article in the case at bar consists of the bulb with a metal filament, the glass star or housing, and a brass base, into which the metal filament wires and the outer star are soldered or cemented. All of those items are integral parts of an entity—a lamp. The removal of any one would destroy the article and prevent its use as a lamp. Being cemented to the base, and providing a protective covering for the filament wire, the glass star is just as much part of the lamp as the bulb with the metal filament. The article, in its entirety, is made up of "a bulb, fitted with other parts, and the whole forming a lamp." *B. B. T. Corp. of America* v. *United States, supra.*

In his brief, counsel for defendant argues that the decision of this court in the matter of *New York Merchandise Co., Inc.* v. *United States,* 2 Cust. Ct. 275, C. D. 142, is controlling. In that case the court held the articles there before it to be properly dutiable as manufactures of metal under paragraph 397 of the Tariff Act of 1930, rather than under the provision in paragraph 229 for "incandescent electric-light bulbs and lamps * * * with metal filaments." Counsel for defendant contends that the lamps in question are substantially the same as those which were involved in the *New York Merchandise Co.* case, *supra,* and that therefore the conclusion reached therein is equally applicable here.

We do not agree with this contention. The cited case involved certain so-called "kristal star lamps." Each article was made up of a complete incandescent bulb or lamp with metal filaments cemented in a miniature threaded base ready to function when and if inserted in series in a proper socket. To this bulb or lamp there was attached a fiber collar flaring out from the point where the bulb entered the base. To the outer edge of this fiber collar there was attached a metal, glass-tipped, five-pointed star. It was attached to the fiber collar by small, soft, metal lugs or clips crimped into a fastening position by the simple expedient of pressing down said lugs or clips. The entire article so made was marketed as "kristal star lamps." At the trial, the above-described lugs or clips were

opened and the metal, glass-tipped star removed, leaving the incandescent lamp or bulb intact as a unit and ready to function as a lamp.

The articles before us are clearly distinguishable from the merchandise described in the *New York Merchandise Co.* case, *supra*. In the case at bar, the glass star or outer portion of the article is an integral part of the entire lamp. It is cemented in the metal base and forms an insulated conduit or channel for the introduction of the bare filament wire from the contact point in the base to the point of entrance into the vacuum bulb. While it is of record that if the outer glass star is broken the lamp will function, it is obvious that if the glass star is entirely removed, as was the outer covering in the *New York Merchandise Co.* case, *supra*, the filament would be broken, the insulating element would be removed, and the light-giving element could not function. The outer colored-glass star is an integral part of the lamp itself. Whereas the crystal star metal and glass casing of the lamp involved in the *New York Merchandise Co.* case, *supra*, was merely an accessory to the light-giving element, the glass star in the case before us is an essential and inseparable part of a complete incandescent electric-light lamp.

We therefore hold the merchandise in question to be properly dutiable at the rate of 20 per centum ad valorem under paragraph 229 of the Tariff Act of 1930, as incandescent electric-light lamps with metal filaments, as claimed by plaintiff.

That claim in the protests is accordingly sustained, and the decision of the collector in each instance is reversed. Judgment will be issued accordingly.